I believe that the immigration judge in this case, the government asks you to defer to his judgment, but I'm afraid that, well, he arranged for the arrest of Mr. Ballout after Mr. Ballout was paroled into the United States by the department and was employed gainfully at a restaurant and posed no danger. So the effect of the judge's interpretation of the Patriot Act in this case really enabled him to, you know, have Mr. Ballout arrested, essentially. I think that on the outside shows that there's a question of abuse of discretion here, and the immigration judge has allowed his outrage over the events of September 11 to color his interpretation of the case. Well, is it true that Mr. Ballout was shown to have been a member of the GIA? Yes, he admitted membership. And isn't it true that the GIA is on the list of terrorist organizations? Correct. So where's the problem? Well, he was arrested twice by the Algerian military and mistreated both times, the second time tortured with a burn of acid on his leg. We don't get to that, do we? So long as he's identified as a, quote, terrorist, unquote, that's enough, isn't it? You don't get to asylum issues. Oh, okay. It's not so – the law, the GIA has pointed out that the standard for judging activities that define engaging in terrorist activities in the footnote here in the brief, and I – Three years in a GIA camp? And he was prisoner. He had to convince his guards to defect with him in order to escape from them. He only carried that gun in the first months, and after that, he became questionable ideologically and suspect by the GIA and put under armed guard. Now, he eventually convinced, like I say, his guards to defect with him, and he fled the United States. This is – this is the kind of person we would – we want to encourage to belong to such groups because of their ability to reason and convince terrorists from their acts. What do we do with the findings by the I.J. in this case? I don't think – the I.J. cited the fact that he carried the hunting rifle, the two-shot hunting rifle with the 15 rounds of ammunition in the first months, and the fact that he espoused the beliefs of the organization. Again, I don't think that his mere – his mere – He only gets enough – Agreement, yeah, and the fact that he eventually disagreed and he didn't do anything – I mean, on the one hand, it's the decision of the I.J. that I think went too far in this case, and the other one is that the burn on his leg indicates past torture, and I think there – I mean, the government wants to calculate what the chance of future torture is if he goes back to Algeria, but I have a – I think he should be sort of given at least consideration for the fact that he was tortured in the past and shouldn't have to go back and face those – that government. Okay. Want to reserve the rest of your time? I want to reserve the rest of my time, but after one more practical matter here. My client has been removed from the United States, and if you merely remand the case, it's going to be dismissed for lack of jurisdiction unless – and I've thought of a way of rescuing him – that the subpoena power of the board be invoked, or the IJ, so that a subpoena may issue for him to be his own witness in the asylum case in the United States, and I might be able to negotiate with the Algerian government for his release with that subpoena. That's – at least there was another situation I've had here where I got – well, actually a couple more remands, but one Chinese situation that I want to try this out with. I believe the Chinese government will be receptive. I'm sure you're clear on the facts. He's gone now? He's not in the United States now? Right. I was very emotional when I was trying to get the stay this past summer, I believe. Your Honor, he might have been on that panel, and I was denied. This is not moot because he's gone? Well, I believe that he fled once. He can flee again. We are – I want to maintain the United States as a refuge for the oppressed and persecuted in any way we can. You're saying it's not moot because he could flee again? That's the reason it's not moot? Well, it's not moot because he might be in danger right now. Yeah, but he's not here. Maybe he can be here. I mean, it's – he's somewhere, if he's still alive. Yeah, he might be somewhere, but I mean, he's not here. Okay. Your jurisdiction does extend offshore, I've been told that many times, that – to the adjustment on the – He was – he's not here because he was deported. He's been removed, yes. The judge arranged for his, you know, detention, and then I was unable to stay the removal. I went up the chain of command board, Ninth Circuit. I didn't file in the district court, but there was another case that I had has been taken over by another attorney, Nasaruddin, who is also a Jurian, who was allowed to remain free after the IJ decided against him, but then was later picked up during the pendency of the BIA appeal, which would have actually been a reasonable position to take by this judge in this situation, I believe. We could have argued with the BIA whether he should be detained or not. The service didn't – you know, they paroled him in after a month of detention or so in the beginning, so they didn't consider him a danger. Okay. Good morning. Ethan Cantor, Department of Justice, on behalf of the Respondent. Do you have jurisdiction? Yes. The court retains jurisdiction as a result of the amendments by the IRERA statute. Prior to IRERA, the removal or departure of an alien would defeat or remove the jurisdiction of the court, but Congress amended the statute in 1996 to provide that the departure or removal does not affect the jurisdiction of the court over a petition for review. So the court still has jurisdiction. If Mr. Bellout prevails, what happens then? I mean, the practicality of it, how does it work? Well, he has several claims, and it depends upon whether he prevails whole or in part. Do you send a plane to go pick him up? I mean, how does it work? Well, how does it work? It could work various different ways. It depends on the circumstances, where he is. I'm having a hard time visualizing how the – now he's back in Algeria, and if it's not moot and he prevails, what happens? He gets a piece of paper, it's just kind of a symbolic victory for him? No, it would not be a symbolic victory to have a basis for legal status in the United States and thus a basis upon which to enter. He could take that paper to any U.S. consulate and get himself an entry visa? Is that what it is? I believe so. I mean, the actual mechanics – But it's something of that sort. I believe so, yes. Now, you said we have jurisdiction. I'm a little puzzled by that statement, because if we agree with the IJ that he was found to be a terrorist within the meaning of the statute and so forth, then we don't have jurisdiction to review that finding, do we? Or do we? No. Yes, you have jurisdiction over this case, because what you are reviewing is an order of removal based on a finding that he was statutorily ineligible for asylum and withholding based on two grounds. One, reasonable grounds to believe he posed a danger to the national security, and secondly, that he was inadmissible on the basis of engaging in terrorist activity or a reason to believe that he would engage in terrorist activity. So those are grounds of inadmissibility or exceptions to asylum and withholding supporting the statutory ineligibility finding of the immigration judge, which was the basis for denial of asylum and withholding. But if we find that he met the definition, we still can entertain his asylum request? If, excuse me, if the Court found that he, there was not even a reason to believe that he engaged in terrorist activity. That he did engage or reasonably. Oh, if the Court, then it upholds the order of the immigration judge. I thought we had jurisdiction. I thought once the IJ finds under 208B2D that, B2AV, that there is reasonable grounds to believe that he engaged or is likely to engage in terrorist activity, then 208B2D cuts off our jurisdiction to review that. That's my understanding, too. Yeah. It's a ground, well. We're both wrong. Well, if you're ineligible for a form of relief under the statute, one could, I think, characterize that as a lack of jurisdiction, but not really. This is not part of Section 242 of the INA, 8 U.S.C. Section 1252, which sets out a basis, for example, discretionary decisions by the board are not reviewable by this Court. If the Court finds that it was a discretionary decision specified under that section, it lacks jurisdiction. This Court has jurisdiction to review the order of the immigration judge, finding him statutorily ineligible. If it agrees with the immigration judge, he's statutorily ineligible for the relief to, for which he applied. I know this is interesting, but we have a statute. Yes. That says there shall be no judicial review of a determination by attorney general under subpart AV. And AV is the one that says the alien is admissible under clause so-and-so-and-so. If the attorney general determines that there is no reasonable cause for it, is a danger regarding the alien a danger to the security of the United States. So what I think Judge O'Connor and I are talking about is actual statutory language that says we have no authority. Would you like to look at the statute? Yes, I'm looking at it. Okay. So let me give you the section once again. It's eight. Would you like the INA section or the code section? I can give you INA. I have it right here. Okay. See where it says no judicial review? Well, I'm happy to say the court's correct. You're correct. It's news to you? I overlooked it. You're correct. Does anybody look at your briefs? They overlooked it too? Yeah. That's the end of the case, isn't it? Yes. It only applies to the asylum part of it, doesn't it? Yes. There's also withholding in a convention against torture issue. That's correct. Convention against torture. That's correct. It doesn't apply to withholding of removal, which is section 241. And under that provision, the immigration judge found that there were reasonable grounds to believe he posed a danger to national security. See, we can grant asylum when the guy is not in the United States. I can wrap my mind around that concept. He's somewhere in another part of the world. We say you get asylum. So if you can sort of make yourself the U.S. territory, you have asylum. I have a lot more difficulty wrapping my mind around the idea that once you leave the United States, withholding of deportation relief doesn't become moot. How can you withhold deportation against somebody who's already been deported? Again, I think you're correct, Your Honor. The statute speaks to the power of the attorney general to remove somebody to a particular destination, in this case, Algeria. It's not clear where he is. He's outside the United States. It merely restrains the power of the attorney general to remove him to that destination. It does not necessarily guarantee him the ability to enter the United States. So withholding relief would simply prevent his removal to Algeria, taking his body out of the country. Right. It's no authority. It can't possibly be authority for him to come back in. Right. He'd have to get asylum for that. That's right. Counsel, what's your response to Mr. Artz's contention that the terrorist finding was unsubstantiated because, in effect, this person was held in this terrorist organization against his will and he escaped? Well, the record establishes that, taking his testimony, that for four months he was a voluntary member, full-fledged member of the GIA. He said, you don't go to camp in the mountains with the GIA unless you're a full member. He carried a weapon. He was armed. He carried ammunition. His membership was meaningful. It was knowing. It was voluntary. He knew the agenda of the organization before he joined it. He was an active participant in- But he said, I want out. I don't like these guys anymore. Right. Well, the statute does not address. There's no temporal limitation in terms of when the terrorist activity occurred. If he engaged in terrorist activity, that is a basis for a finding of inadmissibility, regardless of subsequent actions. Is just being a member of a terrorist group tantamount to engaging in terrorist activity? Can one be a member of the group? Well, membership is a ground of inadmissibility itself. Membership alone? Membership alone is a ground of inadmissibility. Well, I can understand saying, look, if you've actually committed terrorist acts in the past, then we don't care whether you say it's a turn of a new leaf. Because, you know, you are terrorists. You bomb people. You do those kind of things. And it's like committing a crime. You're showing you have to be dangerous. I have a little bit more difficulty with the idea that you are a member of a group, didn't yourself engage in terrorism. And then you say, gee, I was wrong. Now I've looked at the group from the inside. They wanted me to do things that I thought were unconscionable. And I didn't do those things. I was just there long enough to figure out they're a bad group. And now I am against them. I think now they're what they're about. That strikes me as the kind of thing, unless you define just being a member of the group as itself being a terrorist activity, this is sort of being a member, that makes you a terrorist, that strikes me as very different from somebody who's actually engaged in terrorism and then gives it up, giving up membership. Are the two equivalent as far as the United States is concerned? They're equivalent depending on which section of the statute you're looking at. Because, for example, in the asylum statute, Congress provided a waiver in one respect. That is, if you're inadmissible under 212a3b, any of the enumerated sections, you're barred from relief under that statute unless only in the case of subsection 6, which relates to representatives of organizations, the attorney general in his discretion finds there are not reasonable grounds for regarding the alien as a danger to the national security. So in that respect, Congress provided a waiver. That, of course, subsection does not apply, would not apply in this case. He's not a representative of the organization. In another section of the statute, there is a waiver where the attorney general and the secretary of state can waive application of the ground of inadmissibility, and I believe that includes mere membership. So there are executive branch waivers available under the statute. Okay. Thank you. You've got a couple of minutes left. Thank you. I just want to, I mean, membership in the organization, it's kind of like, I just want to remind the court that the judge in this case reserved his decision in court so that he could notify the department to have my client picked up at work before his judgment ever reached the attorney of record. By the time the attorney had reached the judgment, he was already in custody. Is that significant? I find that there is a kind of an abusive discretion that somehow the immigration judge has been the person who has found the national security danger here, and has set the wheels of homeland security in motion, and I find that backwards, or there's something wrong there, because I find that the judge is exaggerating his danger. In the very facts that he cites to support his finding that he's likely to engage in terrorism, he's likely to engage in terrorist activities. And like I say, I know he's the judge's outrage, of course, over September 11th. But I think he has allowed his outrage to color his decision in this case. And somehow there was just there was too much power given to him to arrange for the apprehension and removal of my client. Thank you.
judges: Kozinski, O'scannlain, Silverman